## Isaac Barnes *et al. versus* James Bartlett Junior *et al.*

The plaintiffs, who were part-owners of a cargo of oil, applied to the defendant, who was the agent of all the owners for settling the voyage and was also a part-owner, to have their share of the oil set off to them ; and the defendant informed them, that they might have it on the same terms on which he had sold it to P, another part-owner. It was then agreed in writing by the parties, that the oil should be stored, at a specified rate of storage, in a shed at the oil-works of the owners, that D, who was the agent of the plaintiffs, should be accountable for the storage or manufacturing of all the oil put into the shed under his superintendence; and that it should be in the possession of the defendant until regularly settled for in manner conformable to the sale of oil made to P, from the same cargo. It appeared, that the defendant had sold a large part of the cargo to P, who had given negotiable notes for the price. In pursuance of the agreement, D received and stored a quantity of the oil, it having been measured, and the casks designated by the defendant as for the plaintiffs. After the contract was made, the defendant requested the plaintiffs to give him negotiable notes for the oil so received, to be payable in the same manner as those given by P ; but they refused, alleging that they expected to give accountable receipts therefor. The defendant thereupon sold the oil to a stranger, and the plaintiffs replevied it. It was *held*, that the contract between the plaintiffs and the defendant, was for a sale, and not a partition; that the plaintiffs were bound to give their negotiable notes; that as no time was stipulated within which this should be done, it must be done within a reasonable time; that the plaintiffs having refused to give such notes, the defendant was authorized to sell to a stranger; and that the action of replevin could not be maintained against the defendant.

*Held* also, that the defendant in such action was entitled to recover as damages, the value of the oil replevied, with interest thereon from the time of the service of the writ of replevin to the rendition of judgment, no special damage being shown; and that the valuation of the oil in the writ, was to be taken as *primâ facie* evidence of the true value.

Replevin. At the trial, before *Wilde* J., it appeared, that the plaintiffs were tenants in common with the defendant Bartlett and others, of a cargo of spermaceti oil, landed from the ship May Flower, in Plymouth, in June 1830 ; that the cargo was owned in 25 shares, of which $5\frac{3}{4}$ shares belonged to the plaintiffs ; that Bartlett, who was agent for the owners of the oil, on June 21, 1830, undertook to sell the greatest part of it at private sale ; that the plaintiffs and others were dissatisfied, and were desirous that their respective portions of the oil should be ·delivered to them ; and that on June 22, 1830, they appointed Atwcod L. Drew their agent to receive, store, and take care of the same

It further appeared, that Drew called on Bartlett, made known his agency, and asked Bartlett " if he intended any oil for the owners of the May Flower, who wanted their oil ; " that Bartlett answered, " that he knew of his agency, and that he might have it on the same terms on which he had sold it to John A. Parker ; " and that on June 24, 1830, an interchangeable agreement in the following words, was executed by Bartlett and Drew : " The storage of oil in the shed at the oil-works, is to be one and one half cents per barrel of $31\frac{1}{2}$ gallons per month ; and if it lies any time over even months, an additional month's storage is to be charged ; but if manufactured there, no storage is to be charged ; provided however, that the manufacturing commence in the ensuing fall, and proceed regularly on ; but if the manufactory should be discontinued by the present owners, the oil shall pay storage as above provided." " It is the understanding, that Atwood L. Drew is to be accountable for the storage or manufacturing expenses of all the lots of oil put into the shed under his superintendence, and it is to be in the possession of the agent for the owners of the ship May Flower until regularly settled for, in manner conformable to the sale of oil recently made to John A. Parker, from the same cargo." On the same day Drew received and stored the oil, it having been first measured and the casks marked and designated by Bartlett as for the plaintiffs.

It was proved, that Bartlett sold a large part of the cargo to Parker at the rate of $58\frac{1}{2}$ cents a gallon, and took notes therefor payable with interest at the rate of 6 per cent. in two, four and six months ; that Bartlett procured a discount of these notes at the rate of 5 per cent. ; that before the 12th of July following, he requested the plaintiffs to give him negotiable notes for the quantity of the oil which they had taken, payable in the same manner as those given by Parker ; that they declined giving such notes, alleging that they expected to give an accountable receipt therefor, to be settled in a final adjustment, at the price and on the credit of that which was sold to Parker, and that by adopting the price and credit in the sale to Parker, they did not mean to admit Bartlett's authority to make that sale ; that Bartlett rejected this offer,

and proceeded to sell the oil in question to one Judd ; and that the plaintiffs replevied it after it was partly on the wharf and partly on board the vessel of Swift, the other defendant.

It also appeared, that Bartlett, on applying to Mrs. Drew, who was interested with the plaintiffs in the oil, for notes to be signed by her, declared, that the notes should not go out of his hand, that the dividends would pay the notes, and that if all gave notes, the voyage might be settled in forty-eight hours.

The proceeds of the sale of oil to Parker constituted a part of the general fund in the hands of Bartlett, as agent, out of which the debts were to be paid and the dividends made.

The plaintiffs requested the judge to instruct the jury, that the giving of negotiable promissory notes was not of the substance of the contract between the plaintiffs and Bartlett; that they might have intended, that the oil in question should be appropriated to the plaintiffs, as for their shares, and that if, upon a dividend being made, it should appear that the amount received by them exceeded the amount to which they were entitled, they were to pay in the same manner as Parker had paid ; and that, in the mean time, it might be a sufficient fulfilment of the contract, to give accountable receipts.

The plaintiffs also contended, that these transactions vested the property in the oil which was replevied, in the plaintiffs ; that if it was intended, that promissory notes should be given therefor, yet that Bartlett was not authorized to remove it from the place of deposit, or to resell it ; and that as he had so done, the plaintiffs were entitled to this action to reclaim it.

The jury were instructed, that the giving of negotiable notes was of the substance of the contract between the plaintiffs and Bartlett, and that the plaintiffs, not having complied therewith, were not entitled to recover.  They were further instructed, that if they found a verdict for the defendants, they should assess damages at 6 per cent. on the penalty of the replevin bond, it being agreed by the parties, that the Court might reduce the same to such an amount as law and justice might require.

The jury found a verdict for the defendants.

*Eddy* and *W. Thomas*, for the plaintiffs. We contend, that there was a complete severance of the plaintiffs' share of the oil, in pursuance of the contract between them and Bartlett. The share of the plaintiffs was measured, and the casks were designated by Bartlett as for the plaintiffs; and they thereupon became the owners of it, in severalty. *Beaumont* v. *Crane*, 14 Mass. R. 400; *Carter* v. *Toussaint*, 5 Barn. & Ald. 855; *De Fonclear* v. *Shottenkirk*, 3 Johns. R. 170; *Thompson* v. *Gray*, 1 Wheaton, 75; 2 Kent, 390, 392, 393; *Tarling* v. *Baxter*, 6 Barn. & Cressw. 360; *Doe* v. *Knight*, 8 Dowl. & Ryl. 348. This contract is to be construed with a due regard to the relations of the different parties to it; and upon such a construction, it cannot be inferred, that the plaintiffs were to give their promissory notes. *Sumner* v. *Williams*, 8 Mass. R. 214; *Robertson* v. *French*, 4 East, 141; *Rex* v. *Laindon*, 8 T. R. 379; *Doe* v. *Burt*, 1 T. R. 701; *Hopkins* v. *Young*, 11 Mass. R. 305; *Middlesex Turnpike Corporation* v. *Swan*, 10 Mass. R. 384; *Davenport* v. *Mason*, 15 Mass. R. 90; *Crocker* v. *Crocker*, 11 Pick. 256. The construction of this contract was a question for the jury, as its meaning was to be determined by the aid of extrinsic circumstances. 1 Stark. on Evid. 429; *Smith* v. *Blandy*, 1 Ryan & Moody, 260; *Hotham* v. *East India Company*, 1 Dougl. 277; *Braden* v. *Gardner*, 4 Pick. 456; *Sidwell* v. *Evans*, 1 Rawle, Penrose & Watts, 383; *De Ridder* v. *M'Knight*, 13 Johns. R. 294; *Phillips* v. *Bistolli*, 2 Barn. & Cressw. 511; *Crane* v. *Morris*, 6 Peters's Sup. Court. R. 598; *Davis* v. *Barney*, 2 Gill & Johns. 382; *Aylwin* v. *Ulmer*, 12 Mass. R. 22. If Bartlett intended to retain the notes in his hands, according to his declaration to Mrs. Drew, they would be the same in effect as accountable receipts; and the giving of such receipts would be a *substantial*, and therefore a *sufficient*, compliance with the terms of the contract. Com. Dig. *Condition*, *G*, 14; *Tollet* v. *Tollet*, 2 P. Wms. 489. If our construction of the contract is correct, this action is maintainable. The *lien* which Bartlett had upon the oil, gave him no authority to sell it; and he having attempted to sell, the plaintiffs had a right to take possession of the oil

2 Kent's Comm. 503 ; Story on Bailm. 208, 237 ; *Pothonier v. Dawson*, 1 Holt's N. P. R. 383; *Jarvis* v. *Rogers*, 15 Mass. R. 396 ; *Daubigny* v. *Duval*, 5 T. R. 604 ; *Lickbarrow* v. *Mason*, 6 East, 27, *in notis ; Emerson* v. *Fisk*, 6 Greenl. 200 ; 9 Dane's Abr. 157 ; *Meldrum* v. *Snow*, 9 Pick. 441 ; *Farrant* v. *Thompson*, 5 Barn. & Ald. 826 ; *Ayer* v *Bartlett*, 9 Pick. 156 ; *Portland Bank* v. *Stubbs*, 6 Mass . R. 422.

*W. Baylies, Beal*, and *Coffin*, for the defendants, to the point, that in the construction of the contract, the intention of the parties was to be inferred from the subject matter of the contract and the terms in which it is expressed, cited *Robertson* v. *French*, 4 East, 135 ; *Brewer* v. *Knapp*, 1 Pick. 332 ; to the point, that the reference in this contract to the sale to Parker, was equivalent to an insertion of the terms of that sale, *Worsley* v. *Wood*, 6 T. R. 710 ; to the point, that the giving negotiable notes was a condition precedent, which was not performed, and therefore that the property in the oil did not vest in the plaintiffs, 2 Kent's Comm. 391 ; *Hussey* v. *Thornton*, 4 Mass. R. 405 ; *Marston* v. *Baldwin*, 17 Mass. R. 606 ; *Whitwell* v. *Vincent*, 4 Pick. 449 ; *Smith* v. *Dennie*, 6 Pick. 262 ; and to the point, that if the contract was set aside, the parties were restored to their original rights, and therefore, that Bartlett, as agent, was authorized to sell to Judd, or if not so authorized, was a tenant in common with the plaintiffs, in either of which cases this action could not be maintained against him, 1 Chitty on Pl. 66. Upon the question of the damages, they cited *Bruce* v. *Learned*, 4 Mass. R. 614 ; *Huggeford* v. *Ford*, 11 Pick. 223 ; *Wood* v. *Braynard*, 9 Pick. 322.

SHAW C. J. delivered the opinion of the Court. This is replevin for a parcel of spermaceti oil. One principle in regard to this form of action is well settled, which is, that to maintain it, a party must have not only some right of property, but the right of possession ; whence it follows, that a tenant in common cannot maintain replevin against a co-tenant, because they have each and equally the right of possession.

*Oct. 26th*

It is conceded, that there was a time when the parties were tenants in common, that is, at the arrival of the whal-

Barnes
v.
Bartlett.

ing-ship May Flower, by which this cargo of oil was brought in. It is incumbent on the plaintiffs therefore to show, that by some valid act, they became tenants in severalty, of the parcel of oil which is the subject of this action, and that it was so far put under their control as to give them a right of possession. This the plaintiffs proposed to do by showing that this parcel of oil was severed, marked and set apart for the plaintiffs, and that nothing remained to Bartlett but a right of lien for storage, and that when he undertook to sell the oil to a stranger, he violated the trust reposed in him, parted with the possession, and thus waived or lost his lien, and that the plaintiffs thereby had an immediate right of possession, which, connected with their right of property, was sufficient to enable them to maintain this action.

It requires consideration to see whether the facts were such as to make out this case. The plaintiffs and Bartlett, with other owners of the May Flower, being tenants in common of the cargo of oil, undoubtedly it was competent for them to appoint a common agent and authorize him to sell the whole and divide the proceeds, or to make a division and partition of the oil specifically, so that each should hold his share separately. Whether they have made such partition depends upon the agreement manifested by the acts done, and the intent and purpose with which they were done. The plaintiffs rely mainly on the fact, that the oil in question was separated, marked and set apart for the plaintiffs; but whether this was done with a view to a partition, or to a sale, depends upon all the facts taken together.

It appears that Bartlett was a general agent for the owners to sell the cargo of oil, so constituted either by some specific authority after its arrival, or by the terms of association under which the enterprise was undertaken. The plaintiffs being dissatisfied with the sales made by Bartlett, applied to him, through their agent Drew, to have their shares divided and set off to them. But to this Bartlett did not assent, but made to them another proposition, which was, to sell to them upon as good terms in regard to price and credit, as he had been selling to others; this seems to have been intended to meet and obviate any ground of complaint, because, if the terms

were unfavorable to them as owners, this disadvantage would be more than counterbalanced by the benefit they would derive from a favorable purchase. We think, therefore, that the proposal made by the plaintiffs to divide, was never acceded to, but the offer to sell on the same terms as those of the sale to John A. Parker, was acceded to, and the separation and marking took place in pursuance of such contract of sale, and not as a division among tenants in common. The written agreement entered into by the parties on June 24, 1830, confirms this view. It provides that the oil is to be stored in the oil-shed at the works of the owners, the rate of storage is agreed on, and certain contingent stipulations are made in regard to manufacturing. It then goes on to provide, that the lot of oil is to be in the possession of the agent for the owners, until regularly settled for, in manner conformable to the sale of oil recently made to John A. Parker from the same cargo. The terms of the sale to Parker, as to price and credit, on negotiable notes, are shown. Had it been a division and not a sale, no price or credit would have been agreed on, and no reference to the sale to Parker would have been necessary or pertinent. The plaintiffs would have taken their aliquot part in gallons, without reference to price. Further, this stipulation, that possession should be retained by the agent for the owners, shows that it was not to preserve the lien for storage, but that the oil was to remain till settled for. The sale was not to be completed by a delivery of the oil, till settled for, as Parker had settled for his. This reference to Parker's contract shows what the plaintiffs were to do. Till such delivery, in pursuance of a contract completed, the tenancy in common did not cease. It was a contract of sale, to be completed by payment of the stipulated price, and a delivery, actual or constructive, and until this was done the plaintiffs had not the right of possession. No doubt property passes by a bargain without delivery, so as to place it at the risk of the vendee ; but the vendee has no right of possession, till delivery, and delivery cannot be obtained, till payment is made, or the other terms of sale are complied with. Showing, therefore, that if the property had been lost or destroyed, it would have been at the risk of the vendees, goes little way to

7 *

show that they could maintain replevin.  *Hussey* v *Thornton*, 4 Mass. R. 405.

We think the contract was a contract of sale, and the plaintiffs were bound to give their notes for the amount; and as no time was stipulated, it was to be done within reasonable time, and Bartlett could not lawfully sell to others till after the lapse of reasonable time.    Having waited a reasonable time, he demanded notes, which the plaintiffs declined giving, on the ground, that they were not bound to do so.    But if they were bound to do so, and we think they were, this refusal was a rescinding of the contract on their part, and then Bartlett was remitted to his general authority to sell, this not having been revoked.    His sale therefore, afterwards made to Judd, was not such a violation of his authority and trust, as to give the plaintiffs a right to interfere.    Under these circumstances, the Court are of opinion, that the instruction to the jury was correct, that upon the contract, if the terms of Parker's contract were to pay in notes, which was not contested, the giving of negotiable notes was of the substance of the contract, and that the refusal of the plaintiffs to do so, prevented the contract from being completed, so as to vest the right of property in severalty, and the exclusive right of possession, in the plaintiffs.    By this separation of the oil therefore, in pursuance of a contract never completed, neither the right of property nor the right, of possession, of the plaintiffs, in this parcel of oil, was changed; they remained as they were, tenants in common; and this action cannot be maintained.

On the subject of damages, we think they must be reduced, according to the right reserved at the trial, to 6 per cent. on the value of the goods.    The case is not within the letter or the equity of the statute which gives 6 per cent. on the penalty of the bond, and requires that such penalty be given for double the value of the goods; that applies to cases, where the process of law has been delayed by the replevin.    It is desirable, that the assessment of damages should be reduced as far as possible to general rules.    In trover, the rule is well established to be, interest on the value of the goods from the time of the conversion to the time of the assessment.    And when no special damages are shown, the same principle applies to

replevin. Interest is to be calculated from the time of the service of the writ of replevin to the present time, on the value of the goods, and the valuation in the writ is to be taken as *primâ facie* evidence of the true value.